Which is EEOC v. Aerotek. Mr. Herka May it please the Court, Tom Herka on behalf of the Appellant, Aerotek, Inc. We are here today hearing an appeal of the District Court's ruling granting the EEOC's application for an ordinational cause why a subpoena should not be enforced. This is premised upon a recommendation which was began by the EEOC back in August of 2013. Mr. Herka Yes Forgive me, but I am going to interrupt you and ask you this. In the brief, all of Aerotek's arguments seem to presume that the EEOC is investigating Aerotek's clients rather than Aerotek itself. If the EEOC is also investigating Aerotek itself, then why wouldn't it be relevant to talk to some or all of the clients at Aerotek offices where discriminatory requests have already been identified? That just seems highly relevant to me. Mr. Herka Well, Your Honor, I don't believe it changes the analysis, and I think the EEOC has in fact indicated that both Aerotek and the clients are under investigation. I believe the directed investigation letter itself from August 19 of 2013 does state that it's both the organization's facilities and those owned and operated by the clients. So, Your Honor, I believe that they are targeting both of us, and so all the arguments go to both Aerotek and to the clients being at issue in this case. And with that, Your Honor, looking at what the request is, which is a request for 22,000-plus client names, the issue here, first of all, is that the standard of review here before the court is one for abuse of discretion. The problem we have is that by that standard, the movement, Aerotek, must demonstrate that there is factual determinations on which it is based that are clearly erroneous or that the ruling constitutes an abuse of discretion. The problem we have here is there were no factual determinations made by the court, no findings of fact at the district court level. There certainly were no conclusions of law. There also was no analysis per the legal standard as to relevance. In fact, if you look at the two transcripts at issue, the district court never once used the terms relevant or relevance. And so the court here is, in fact, in a difficult situation, a precarious situation, because there is no factual determination, no conclusion of law, no analysis for it to review for abuse of discretion. So, in effect, this court has to look at the arguments of the parties made on appeal, facts or arguments presented at the court of appeals at the first level. Mr. Herka, before you go any further, could I ask you to tell us what information is subject to this subpoena that has not yet been produced? Yes, Your Honor. The original subpoena did ask for contract employee names and their contact information and also client information. And that's linked to 62 facilities nationwide for a period of five years. Airtek has voluntarily produced the information about the contract employees, including their contact information. So the only thing before the court is the identification of 22,000-plus clients of Airtek. You have not produced any of that information yet? We have produced it, Your Honor, because our stay was denied. That's what I'm asking you. It's still at issue, although we produced that information because the stay was denied. Right. We are still here before the court to argue that that information must be returned. Why is it? That's the relief you're seeking? Well, the relief we thought originally was not to turn it over, but when the court denied our stay, we had no choice but to turn it over. Well, that's not quite right, but... Well, Your Honor, we did pursue a stay both in the district court and before this court. Yes. The stay was denied in both courts, and therefore the court's order at the district court level was in effect and required us to comply by producing the information. Okay. Or risk contempt sanctions to... Exactly, Your Honor. ...get that attention. Okay. Why is this not mentioned in the briefs? Did I miss something? You mean the issue of having produced the information? A request to return information that has already been produced, which seems to me essential to whether we actually have a viable case or controversy before us. Well, I believe the timing is such that we filed our initial brief before turning over the information. The stay, we sought one stay and then sought reconsideration, so we did not have it in our brief. I think the issue remains the same, which is the EOC is not entitled to the information, and they should not have it. Why didn't you send in an addendum to the court to let us know? Well, Your Honor, I don't believe that it's relevant that the information is turned over. In fact, the EEOC itself... You don't think this is an issue that should have been at least raised with us when the relief you're seeking doesn't even mention this? Well, Your Honor, given that the motion to stay was submitted to this court as well, along with a notion for reconsideration, we thought it was within the court's knowledge that it had been denied. That does not necessarily go to the same judges. I understand, Your Honor. And... We have motions panels to handle that. I am, I mean, what we've got is a whole new issue of potential mootness that's not in the briefs at all. Your Honor, at the, in the motion to stay with the court, this court, the EEOC's response, in fact, said at docket 22, that even if we were required to turn over the information, and I quote, it would not moot this appeal, unquote. And the argument or the understanding is that if this court were to reverse the district court, then in effect the EEOC would return that information. And so from that perspective, it would not be moot if this court reversed the decision. And the EEOC acknowledged that in docket 22 in their filing. Parties often agree that a case is not moot when it is. But again, in this situation, Your Honor, if the court were to reverse the district court's ruling, they return the information, it would not be a moot issue. Otherwise, effectively, by denying our stay, this court has denied our right to appeal. Well, that happens sometimes. I mean, sometimes emergency motions are denied, and that does have the effect of mooting cases. And in this case, it would have moot the case in its entirety. But again, with the understanding that ultimately if this case is reversed at the district court level, the return of the information will be a remedy that we are seeking. You know, it seems to me that if the court were to allow AEROTEC to control the investigation by requiring the EEOC to justify particular requests, identify targets, that would give AEROTEC an opportunity to tip off clients or even, heaven forbid, destroy evidence. And that seems unprecedented to me. I wondered, as I was reading, if you could cite any case where the target of the investigation has been allowed to control an investigation in such a piecemeal manner. Your Honor, I can't cite any cases because that's not what my client AEROTEC is seeking to do here. We are not trying to put a hold or limit on the EEOC investigation. What we're trying to prevent is overreaching of the EEOC trying to get information, which is not relevant to their investigation or the charge or issuing letter at hand. Your Honor, they have every right to pursue the investigation as they wish. We do not control them. We do not limit them. And part of an investigation is, as they move along, they come back and ask for additional information. It's not unusual they come back and say, we found some evidence of wrongdoing. Now give us these 20 personnel files. We found something wrong here. Turn this over. That's the typical process. But to come out and say, based on a single allegedly improper requisition at a facility, we now want the thousands of clients to identify. Well, we now have hundreds, right? Pardon me? We now have hundreds of explicitly discriminatory requests, right? As they purport. We've never seen them. We don't know it. But that's what they claim. Linked to 62 facilities. So the position is, we find one act of wrongdoing. We want five years of every client from that facility. Our response is, feel free to investigate. We have unique identifiers for all the clients. If they give us a list of identifiers they want the client names, we'll give it to them. What we don't want is to give them 22,000-plus client names. Part of the situation is that giving this to the staffing agency, it's a unique situation. These are not employee names or employee information. We've given that to them. That's fine. Counsel, could you address the Morton Salt standard that's mentioned in the EEOC's brief? That was under the FTC statute, but that's the standard that applies here, where the court said this sort of investigation is more analogous to the grand jury, which does not depend on a case or controversy for power to get evidence, but can investigate merely on suspicion that the law is being violated or even just because it wants assurance that it is not. Yes, Your Honor. That does carry with it still a relevance component, and that's the EEOC's burden to demonstrate the relevance of what they're seeking to the investigation. The only mention of what the relevance is here in the EEOC's application to the district court is as follows. The EEOC must now investigate these discrimination requests, meaning those hundreds, as well as investigate whether a respondent made other discriminatory referrals by interviewing Aerotech's temporary employees to find out what relevant information they have, end quote. That's the only discussion of relevance in their application. No talk about reaching out to clients, getting client names, that information. Their application doesn't talk about that. It's only upon appeal they start raising new arguments and explanations. Counsel, this is the kind of case that presents a moving target, as our earlier conversation indicated. And their application was before you had produced a number of items, correct? Correct, Your Honor. Including those files with the requests, correct? The names and contact information for the employees. But there was no argument as to why the client information. I see my time's up here. I think I have three minutes reserved. If Judge Hamilton has any questions. No. Thank you. Thank you very much, Your Honors. Ms. Starr? May it please the Court, my name is Susan Starr, and I represent the Equal Employment Opportunity Commission, as appellee. Despite all of Aerotech's arguments, it fails to demonstrate how the district court abused its discretion by enforcing the subpoena. Do you think this case is moot? I think that there's an argument that it might not be moot. But technically, I think the court has wide powers, and so it could order EEOC to give back information that it already has. But it also makes sense if this court decided that it was moot. Have you been using the information that was provided that's subject to the appeal? Yes, what I know is that we have the information and that Aerotech hasn't objected thus far and said that we've been overreaching or had any issues with it. Have you been using it? I have limited information because I'm just handling this appeal, and all I know is that we received the information and that we're processing the information. Whether or not we have specifically contacted individual clients yet, I am not aware of that. I am wondering, I mean, before we learned all this, you know, I note that the EEOC asked us to affirm the district court and also to remand. And I'm wondering why would we be remanding? What is left to do in the district court if we affirm? Are you concerned about compliance and you want to ensure that the court retains jurisdiction? Yes, that's precisely it, Your Honor, just that level of oversight. And opposing counsel had responded to you by saying that we were investigating both Aerotech and the clients. The only respondent in this case is Aerotech. And Aerotech argues that the only clients, only the clients who worked with Aerotech to place potentially discriminatory requisitions are relevant to EEOC's investigation. And as this court has indicated, that is not the standard. The information sought does not have to lead to a finding of discrimination. It doesn't have to lead to probable cause of discrimination to be relevant. All that it needs to be relevant is any material that might cast light on the allegations. The purpose of EEOC's investigation is to determine if Aerotech recruited, hired, or placed individuals using age-based criteria. The information we are talking about is a database that was compiled by Aerotech. EEOC is entitled to verify the information and not just rely on what Aerotech recorded. Part of that verification includes the client's names. It will aid us to try to understand the whole picture. EEOC needs context to determine if there's reasonable cause to believe that Aerotech is violating the law. What definition of relevance do we use? Title VII or ADA? Well, they're essentially the same, Your Honor. They're both broad. They both basically say that virtually any matter that might cast light on the allegations is what the Supreme Court said in Shell Oil. This Court in an ADEA case in Elrod, EEOC versus Elrod, said touches upon the matter under investigation. So they're very close. They use very similar language. Under either expression, the client's names clearly fall within the terms of relevance. What we have found thus far in 62 offices, that there were Aerotech recruiters that were willing to go forward with discriminatory, potentially discriminatory requisitions. We don't know whether they're just bad actors at these 62 facilities or it reflects a culture of tolerating age-discriminatory requisitions. As the district court said, these troubling requisitions that we have thus far discovered serves as the predicate for the spring forward to find out if there's a larger problem. To say that if EEOC discovers incredibly damning evidence, let's say, that that necessarily limits EEOC's investigation rather than expands it is counterintuitive. It would mean that if EEOC investigates and finds nothing, that its right to investigate is broadened. It just really doesn't make a lot of sense. Aerotech speculates that its clients will suffer business repercussions if their clients find out that it is being investigated for possibly discriminatory business practices. But that's not a concern under a relevancy inquiry. That has to do with hardship. And as Aerotech concedes, this concern does not rise to the level of an undue burden. So its concerns, although are important to it, aren't legally significant in this context. We respectfully request that this Court confirm the district court order. I'll give you a minute. Thank you, Your Honor. Just a few points of clarification. In fact, the hundreds of allegedly improper acquisitions comprise .001% of the acquisitions that they searched. They have poor acquisitions. They have contact of all the employees that were contracted. And they have the names of all the employees. They have unfettered access to the employees to talk to them about their experiences, where they were placed, for whom they worked. They can get this client information by talking to the employees as well. Our concern is giving them whole cloth, 22,000-plus names of clients, with fear that they will contact them through mass mailings, questionnaires, subpoenas, et cetera, which would be disruptive to Aerotech's business. And with a small sample .001%, they believe they're entitled to. So one in 10,000? I'm sorry, Your Honor? One in 10,000? .001%? Yeah. I believe that's correct. Hundreds? They found hundreds. They found hundreds. How many did they review? They reviewed a total of 412,000-plus requisitions. Okay. I think you're a little off on the decimal, but we'll leave it at that. So, okay. All right. I see my time is up, Your Honor. May I ask that you please reverse that? Do you have any comment about the definition of relevance or destination? As far as the definition of relevance, Your Honor, I think it's fairly well understood. We are talking about a standard whereby the information might cast light on the allegations against the employer. There must be an indication of realistic expectation rather than idle hope that something may be discovered. Because they found hundreds doesn't mean they can talk to 22,000 clients. I don't think that's a real expectation rather than idle hope for discovery. Thank you, Your Honor. Thanks to both counsel. The case is taken under advisement.